# In the United States Court of Federal Claims

No. 24-935
Filed: October 21, 2024[*]
FOR PUBLICATION

| |
|---|
| **ITELLECT, LLC.** |
| *Plaintiff,* |
| **v.** |
| **UNITED STATES,** |
| *Defendant,* |
| **and** |
| **LIGHTGRID, LLC.,** |
| *Defendant-Intervenor.* |

*Daniel J. Strouse*, Cordatis LLP, Arlington, VA, with *Cherylyn H. LeBon*, *Ben Smith*, and *Patrice Howard*, Womble Bond Dickinson, of counsel, for the plaintiff.

*Robert R. Kiepura*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with *Joshua D. Bell* and *Jonathan Pomerance*, Defense Information Systems Agency, of counsel, for the defendant.

*Paul Hawkins*, *J. Bradley Reaves*, ReavesColey PLLC, Chesapeake, VA, for the defendant-intervenor.

## MEMORANDUM OPINION

*HERTLING*, **Judge**

The plaintiff, ITellect, LLC, is an incumbent contractor providing Enterprise Voice Services ("EVS") to the Defense Information Systems Agency ("DISA"). DISA issued a solicitation for the continuation and consolidation of the EVS contract with an existing task order on a lowest priced, technically acceptable basis. After evaluating four proposals, including the plaintiff's, DISA awarded the contract to the defendant-intervenor, LightGrid, LLC.

---

[*] Pursuant to the protective order in this case, this opinion WAS under seal on October 15, 2024, and the parties were directed to propose redactions of confidential or proprietary information by October 24, 2024. The parties have jointly reported (ECF 46) that no redactions are necessary. Accordingly, the opinion is released in full.

After DISA awarded the contract, ITellect learned that the president of LightGrid is married to a DISA contracting officer who, for two months in 2022, served as the contracting officer on ITellect's incumbent EVS contract. This information was not disclosed in LightGrid's proposal to DISA, even though the Request for Quotations ("RFQ" or "solicitation") required offerors to disclose actual or potential organizational conflicts of interest ("OCIs").

When DISA received notice of a protest by ITellect, the contracting officer who oversaw the acquisition investigated the alleged OCI and found no evidence to support ITellect's allegation of an OCI. She therefore concluded that "an actual, potential, or perceived OCI does not exist for this procurement." (AR 1480.)[1]

Based on the relationship between LightGrid's president and his wife, ITellect claims that DISA acted arbitrarily and capriciously by refusing to disqualify LightGrid. First, it argues that DISA was required to disqualify LightGrid for making a material misrepresentation in its proposal and failing to comply with the solicitation's requirement to disclose an actual or potential OCI. Second, the plaintiff argues that provisions of the Federal Acquisition Regulation ("FAR") required DISA to disqualify LightGrid based on the existence of a potential conflict of interest (FAR 9.502(c)), or the appearance of a conflict of interest (FAR 3.101-1), which may have provided LightGrid with an unfair competitive advantage through unequal access to information.

In response, the defendant and defendant-intervenor argue that the plaintiff has not offered any evidence that an actual or potential OCI existed regarding DISA's award to LightGrid. They further argue that the contracting officer's OCI investigation was reasonable, and that LightGrid did not make a material misrepresentation in its offer because there was no OCI to disclose.

The plaintiff has not shown that there was an apparent OCI in the award of the solicitation. Although a marriage between an offeror's president and an agency contracting officer could result in an OCI, no such OCI exists here. No evidence in the record shows or even suggests that LightGrid's president's wife either provided any confidential information to, or communicated with, her husband regarding the solicitation or the incumbent contract. Further, the conflicted contracting officer played no role in any decision regarding the development and issuance of the solicitation, the evaluation of offers to the solicitation, or the subsequent contract award. DISA did not rely upon the alleged omission of LightGrid, and an OCI neither affected the award nor created the appearance of any impropriety. Therefore, the contracting officer's conclusion, finding that the alleged appearance of an OCI was not disqualifying, was reasonable.

The plaintiff's motion for judgment on the administrative record (ECF 29) under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC") is denied, and the motions of the

---

[1] Citations to the administrative record (ECF 23), as subsequently amended (ECF 27), are cited as "AR" with the pagination reflected in that record as filed with the court.

defendant and defendant-intervenor for judgment on the administrative record (ECF 36; ECF 35) are granted.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     The Solicitation and Contract Award[2]

On September 19, 2023, DISA issued a solicitation pursuant to FAR 8.404 seeking firm-fixed-price proposals for EVS under RFQ No. 622366938.  (AR 40, 234.)  The solicitation sought to consolidate an existing EVS contract and an existing task order to "lead to a more cohesive and higher quality of work."  (AR 12.)  ITellect was the incumbent contractor for the prior EVS contract but not for the task order.  (*Id.*)  DISA would evaluate submissions using a best-value-tradeoff analysis using confidence ratings.  (AR 235.)

Under the terms of the RFQ, offerors were required to identify potential conflicts of interest.  Specifically, the solicitation provided:

> Offerors shall specify in its quotation whether or not any potential or actual Organizational and Consultant Conflicts of Interest (OCCI) as described in Federal Acquisition Regulation (FAR) Subpart 9.5 exists for this procurement. . . . If the Offeror believes that no OCCI exists, the OCCI response shall set forth sufficient details to support such a position. If the Offeror believes that an actual or perceived OCCI does exist on this procurement, the Offeror shall submit an OCCI plan with the quotation, explaining in detail how the OCCI will be mitigated and/or avoided.

(AR 235.)

On October 30, 2023, four offerors, including the plaintiff and the defendant-intervenor, submitted proposals.

LightGrid's proposal recognized the importance of avoiding OCIs and explained that its procedures would "maximize technical objectivity over the entire period of performance and, in a systematic and controlled manner, eliminate the potential for bias or unfair competitive advantage."  (AR 875.)  Specifically, LightGrid noted in its proposal that "[b]y rigorous control of all sensitive information and full adherence to the requirements contained in this certification Offeror will first report, and then prevent, avoid, or mitigate any organizational conflicts which may result during the performance of an award under this solicitation."  (*Id.*)  LightGrid's proposal noted three scenarios in which it thought DISA would be most concerned with any potential OCIs.  (*Id.*)  LightGrid also attested that it does "not presently have any actual or

---

[2] Because the plaintiff's "protest only challenges issues related to [the OCI]" (ECF 29 at 10 n.2), this opinion omits a detailed discussion of the solicitation's technical requirements.

potential conflict of interest with respect to the services to be provided . . . under the Solicitation."  (AR 662.)

Nowhere in LightGrid's proposal did it identify any current or potential OCI; it failed to mention a personal or marital relationship between any of its employees, executives, or owners and any DISA employees.

After excluding one offeror for failure to "adhere to the administrative requirements of" the solicitation (AR 1101), DISA evaluated the remaining proposals according to the solicitation's technical requirements as follows:

|  | Offeror | | |
|---|---|---|---|
|  | **Offeror C** | **ITellect** | **LightGrid** |
| **Factor 1, Subfactor 1:** Architecture, System Integration, Systems Engineering and Sustainment Support (PWS 6.2) | **Some Confidence** | **Some Confidence** | **High Confidence** |
| **Factor 1, Subfactor 2:** Engineering Requirements Analysis Support (PWS 6.3) | **Some Confidence** | **Some Confidence** | **High Confidence** |
| **Factor 1, Subfactor 3:** Financial Management and Budget Support (PWS 6.11) High Confidence | **High Confidence** | **High Confidence** | **High Confidence** |
| **Factor 1, Subfactor 4:** Knowledge Management, Information Management, and SharePoint/Web Development (PWS 6.12) | **High Confidence** | **High Confidence** | **High Confidence** |
| **Factor 1, Subfactor 5:** Management and Staffing Approach (PWS 6.1) | **Some Confidence** | **High Confidence** | **High Confidence** |
| **Factor 2:** Price | $42,989,048.00 | $53,130,010.00 | $33,624,927.75 |

(AR 1248-49.)

The DISA contracting officer found that LightGrid's proposal offered the best value and awarded it the contract on April 24, 2024.  (AR 1259, 1262.)

**B.    Post-Award Proceedings and the OCI Investigation**

At an unspecified time, the plaintiff became aware that the president of LightGrid, David O. Smith, is married to a contracting officer at DISA.  The plaintiff subsequently filed this suit

on June 20, 2024, alleging that the relationship between the Smiths either presented an OCI or raised the appearance of an OCI that LightGrid had failed to disclose as required.  ITellect also alleged that DISA had not taken any steps to avoid an OCI or the appearance of one.  (ECF 1.)

The plaintiff alleges that Mrs. Smith has both an imputed interest in LightGrid through her marriage to Mr. Smith and had access to ITellect's proprietary information through her role as a DISA contracting officer.  In that role, Mrs. Smith served as the contracting officer for almost two months on the EVS contract and was the contracting officer for at least one other ITellect contract.  (ECF 1 at 5-6.)

After the plaintiff filed suit, the DISA contracting officer who oversaw the solicitation initiated an investigation into whether an OCI based on the relationship between Mr. and Mrs. Smith existed.  The contracting officer then prepared a report, finalized on July 10, 2024, outlining her findings.  (AR 1473-80.)

The contracting officer first described the steps she took and the materials she considered in her investigation as follows:

> (1) I obtained and reviewed results from a query of Mrs. Smith's emails from her Government Outlook account.  This investigation searched for emails between Mrs. Smith and Mr. Smith or between Mrs. Smith and any LightGrid email accounts.  This investigation was to understand if any nonpublic information was shared via email regarding the current contract (HC104719C0002) or the recompete effort (HC104724F0027).

> (2) I conducted email communication with Mrs. Smith to verify information regarding her involvement with the current contract (HC104719C0002) and the recompete effort (HC104724F0027).

> (3) I obtained a declaration statement from Mrs. Smith regarding her involvement with the current contract (HC104719C0002) and the recompete effort (HC104724F0027).

> (4) I obtained and reviewed historical Office of Government Ethics (OGE) 450 filings for Mrs. Smith and historical advisory opinions from DISA's General Counsel regarding Mrs. Smith's OGE 450 filings.

> (5) I obtained and reviewed a query from DISA's Electronic Document Management System (EDMS) system to understand what documents Mrs. Smith accessed from the current contract (HC104719C0002) and the recompete effort (HC104724F0027) and the dates that she accessed them (EDMS is a type of software that stores, organizes, and manages contract related documents in the form of electronic files).

> (6) Finally, I reviewed old Freedom of Information Act (FOIA) (and responses) from 2020 which appeared to be based on similar

allegations, which, although not strictly relevant to the instant allegation, nevertheless provided helpful context.

(AR 1475.)

The contracting officer's report considered three types of OCIs, pursuant to FAR 9.505: unequal access to information, biased ground rules, and impaired objectivity. (AR 1474-75.) As to the latter two, the contracting officer concluded they were not at issue because LightGrid "was not involved in setting any ground rules for the requirement" (AR 1479), and neither LightGrid nor Mrs. Smith had any role in or input into the source-selection decision. Regarding Mrs. Smith, the contracting officer noted that during the evaluation and award process she had not spoken with Mrs. Smith about "LightGrid in any capacity." (AR 1480.) Thus, Mrs. Smith could not have had any role in or impact on the objectivity of DISA's evaluation of the offers. (*Id.*)

As to unequal access to information, the contracting officer thoroughly reviewed the available information and determined that LightGrid did not have unequal access to any information. (AR 1475-79.) First, the contracting officer examined three email threads between Mrs. Smith and LightGrid. The contracting officer found these emails showed no disclosure of relevant information. The first email was a personal communication between Mr. Smith and Mrs. Smith. The second email was a submission by LightGrid of questions in response to an RFQ unrelated to this procurement. The third email was a capability statement from a joint venture that included LightGrid. Mrs. Smith did not provide any substantive response to these emails and, upon receiving the latter two, promptly requested to be recused from the underlying matters to which those emails related. (AR 1476.)

Next, the contracting officer reviewed Mrs. Smith's sworn declaration, which the contracting officer found "highly credible." (AR 1480.) The declaration clarified that Mrs. Smith had only been a contracting officer on the plaintiff's incumbent contract for one to two months, and her only actions during that time had been to sign four modifications which were "administrative in nature and had no impact to the requirements under that contract." (AR 1478.) Moreover, Mrs. Smith asserted in her declaration that she had not shared with Mr. Smith or anyone else at LightGrid any information she had gained through her role as the DISA contracting officer for the EVS contract. (AR 1476-77.)

The contracting officer also examined Mrs. Smith's Office of Government Ethics Form 450, which Mrs. Smith has completed annually since she started at DISA in 2014.[3] In these

---

[3] The Office of Government Ethics Form 450 is a report that employees and their agencies use to avoid conflicts of interest between official duties and private financial interests or affiliations. Form 450 requires the disclosure of assets, income, liabilities, or ownership interests for an employee, and the employee's spouse and dependent children. It also requires the disclosure of the employee's outside positions, employment history and agreements, and gifts or travel reimbursements. Agency ethics officials use the information provided to determine whether an employee has any potential conflicts of interest that require recusal or mitigation.

forms, she has consistently disclosed her marital relationship with Mr. Smith and his ownership interest in LightGrid. She has received ethics advisory notices in response to her annual submission of her Form 450. These notices instructed Mrs. Smith that she could not "be involved in any action where LightGrid is proposing as a prime or subcontractor." (AR 1477.) The contracting officer noted in her investigation the existence of an agency mitigation plan to address any actual or potential OCI. (AR 1480.) She found that Mrs. Smith had "been recused from working on any requirements where LightGrid is the contractor or potential offeror, and [that] she has requested to be recused from acquisitions where LightGrid submits questions to sources sought notices or requests for information, and where LightGrid is expected to submit a proposal." (AR 1477.)

Finally, the contracting officer found that Mrs. Smith had no role in the solicitation at issue. The contracting officer credited Mrs. Smith's statement that she did not "participate in the solicitation or award of the recompete effort [ ], to include acquisition planning, drafting the RFQ, or drafting/reviewing any other document related to the solicitation." (AR 1477.) The contracting officer also noted that the current solicitation was prepared by one branch of DISA, PS62, while Mrs. Smith worked in a different branch, PS64, that was not involved with the EVS procurement. (AR 1478.)

The contracting officer also reviewed the documents that Mrs. Smith had accessed while serving briefly as the contracting officer on the plaintiff's incumbent contract. Based on that review, the contracting officer noted that Mrs. Smith accessed 13 documents either in 2021 or in June 2024, after the contract award was made. (AR 1478-79.) The contracting officer concluded that "Mrs. Smith did not obtain any advantageous information regarding the recompete effort from [the electronic document management system]." (AR 1479.)

As a result of these findings, the contracting officer concluded that no OCI existed. She determined that the finding that no OCI existed "is consistent with the representations LightGrid makes in [its] proposal," and that, as a result, "LightGrid was not required to submit a mitigation plan (since [it] stated no OCI exists in [its] proposal)." (AR 1480.) She also concluded that DISA "had a mitigation plan in place for Mrs. Smith 'since she started at DISA in 2014 to deal with any actual or potential OCI stemming from Mrs. Smith's role as a [contracting officer], and to date any such allegations have proven unfounded.'" (*Id.*) The contracting officer concluded that "an actual, potential or perceived OCI does not exist for this procurement." (*Id.*)

The contracting officer's findings were incorporated into the administrative record, which was provided to the plaintiff and the Court on July 16, 2024. The plaintiff subsequently filed a motion for judgment on the administrative record. (ECF 29.) The defendant and defendant-intervenor each replied and cross-moved for judgment on the administrative record.[4] (ECF 36; ECF 35.) The plaintiff filed a response and reply (ECF 40 (corrected version)), and the

---

[4] The defendant-intervenor attached an affidavit (ECF 36-1) from Mr. Smith but did not move to supplement the administrative record with that affidavit. Therefore, Mr. Smith's affidavit has not been considered.

defendant and defendant-intervenor then filed their replies.  (ECF 41; ECF 42.)  Oral argument was held on October 1, 2024.

## II.     JURISDICTION AND STANDING

The Court of Federal Claims has jurisdiction over "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  Actions brought under this provision are typically called bid protests.

The plaintiff has alleged that DISA acted arbitrarily, capriciously, and contrary to procurement law in not disqualifying LightGrid from the solicitation for LightGrid's failure to disclose the OCI in connection with its submissions to DISA and for the appearance or existence of an OCI.  (ECF 1 at 7-12.)  Accordingly, the plaintiff's claims fall within the bid-protest jurisdiction of the court.

For a plaintiff to have statutory standing in a bid protest, it "must be an 'interested party,' 28 U.S.C. § 1491(b)(1), that is, a party with a substantial chance of securing the award." *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1152 (Fed. Cir. 2023).  To qualify as an interested party, an offeror must allege facts, that, if true, "establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006).  An offeror can demonstrate a direct economic interest in a post-award bid protest by "show[ing] that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).  ITellect was an actual offeror in the solicitation, and neither the defendant nor the defendant-intervenor challenge the plaintiff's standing.  The plaintiff submitted one of only two acceptable offers aside from LightGrid's.  Although ITellect's offer was significantly more expensive than the other non-awardee's proposed price, its proposal received higher technical ratings.  (AR 1248-49.)  The plaintiff therefore has a substantial chance of being awarded the contract if LightGrid were disqualified.[5]  Thus, the plaintiff is an interested party and has standing.

## III.    STANDARDS OF REVIEW

On a motion for judgment on the administrative record pursuant to RCFC 52.1, the court's review is limited to the administrative record, with findings of fact made as if the case was a trial on a paper record.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1353-56 (Fed.

---

[5] ITellect's price quotation was determined to be "incomplete"; DISA noted that ITellect's pricing "would need to be addressed through an evaluation notice."  (AR 1258.)  The award was ultimately made "without exchanges."  (AR 1260.)  ITellect's allegation of prejudice is sufficient to support standing.

Cir. 2005).  The court must determine whether a party has met its burden of proof based on the evidence in the administrative record.  *Id.* at 1355-56.  Genuine issues of material fact will not foreclose judgment on the administrative record.  *Id.*  The burden is on the disappointed offeror to demonstrate by a preponderance of the evidence that the agency's decision was arbitrary and capricious.  *See XOtech, LLC v. United States*, 950 F.3d 1376, 1380 (Fed. Cir. 2020); *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018); *Bannum,* 404 F.3d at 1353; *see also Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 759, 766 (Fed. Cir. 2021).

Bid protests require a two-step analysis.  *Bannum*, 404 F.3d at 1351.  First, the court must determine whether the government's conduct is "arbitrary and capricious" or "not in accordance with law" under 5 U.S.C. § 706.  *Id.* (citing 5 U.S.C. § 706; 28 U.S.C. § 1491(b)(4)).  To find that an agency acted arbitrarily and capriciously, a court must "determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009) (quoting *PGBA, LLC v. United States*, 389 F.3d 1219, 1225 n.4 (Fed. Cir. 2004)).  Second, the court must then "determine, as a factual matter, if the bid protester was prejudiced by that conduct."  *Bannum,* 404 F.3d at 1351.  "[T]he second step is always required before setting aside a bid award, regardless of whether the error identified at the first step was arbitrary and capricious action or, instead, a violation of law."  *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 997 (Fed. Cir. 2021).

Moreover, to demonstrate that an agency's OCI determination is arbitrary or capricious, a protester must identify "hard facts" that point to the "appearance of or opportunity for impropriety."  *CACI, Inc.-Federal*, 719 F.2d 1567, 1582 (Fed. Cir. 1983).  Such hard facts stand opposed to mere inferences based upon "suspicion and innuendo," *id.*; such inferences will not suffice to overturn an agency's OCI determination.  *Id.* at 1581-82.

A court's review of the procurement decision made by the procuring agency in a bid protest is "highly deferential."  *Advanced Data Concepts v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  A court will not disturb an agency's determination so long as there is a reasonable basis for it, even if the court "might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations."  *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (cleaned up).  A court must take care not to substitute its judgment for that of the agency, even if reasonable minds could reach different conclusions.  *See Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974).

Specifically, in a protest challenging an agency's rejection of an OCI claim, a court affords "twin layers of deference" to the agency's reasonable determinations.  *Oak Grove Techs., LLC v. United States*, No. 2022-1556, 2024 WL 4138392, at \*9 (Fed. Cir. Sept. 16, 2024).  First, the "FAR provides a contracting officer with considerable discretion to conduct fact-specific inquires of acquisition proposals to identify potential conflicts."  *PAI Corp. v. United States*, 614 F.3d 1347, 1352-53 (Fed. Cir. 2010).  Second, there is a "'strong presumption' that government officials . . . act consistent with their duties."  *Oak Grove*, 2024 WL 4138392, at \*9 (quoting *Sanders v. U.S. Postal Serv.*, 801 F.2d 1328, 1331 (Fed. Cir. 1986)).  Applying this doubly deferential standard, a court must sustain an agency rejection of an OCI claim unless the

decision does not "evince[ ] rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

A court may not second-guess the adequacy of an agency's OCI investigation and may not overturn an agency's conclusion, even when the agency failed to take additional investigative steps that may have been appropriate. The scope of an OCI investigation remains "a proper exercise of the agency's discretion." *Oak Grove*, 2024 WL 4138392, at *9 (finding that the decision not to interview individuals in a post-award investigation was not unreasonable considering the investigative steps taken and the evidence amassed).

## IV. DISCUSSION

ITellect argues that DISA acted arbitrarily and capriciously in two ways: first, by not disqualifying LightGrid's proposal for making a material misrepresentation and failing to comply with the solicitation's requirement mandating the disclosure of actual or potential OCIs (ECF 29 at 11); second, by not disqualifying LightGrid's proposal for violating the FAR's OCI provisions. (*Id*. at 15-16.) ITellect also argues that LightGrid's proposal should be disqualified for making a material misrepresentation when it failed to disclose "the marital relationship between LightGrid's President (and partial owner) with Mrs. Smith, a DISA contracting officer" (ECF 29 at 11), and for "fail[ing] to comply with the material requirements set forth in the solicitation" (*Id*.).

In support of its material-misrepresentation claim, ITellect cites LightGrid's statement in its proposal attesting that it does "not presently have any actual or potential conflict of interest with respect to the services to be provided . . . under the Solicitation." (AR 662.) ITellect also claims that LightGrid failed to comply with the solicitation provision that requires an offeror that "believes that no [OCI] exists . . . [to] set forth sufficient details to support such a position." (AR 235.) ITellect argues that LightGrid should have been disqualified for not "mention[ing] unequal access to information OCIs" and not "provid[ing] sufficient details as to why it believed it did not have an OCI." (ECF 29 at 15.)

In response, the defendant and LightGrid argue that "LightGrid's proposal does not contain a material misrepresentation because there was no OCI – potential or otherwise – to report." (ECF 36 at 16; *see also* ECF 35 at 8.) The defendant notes that, even if LightGrid's disclosure was insufficient, FAR 9.504(d) gives DISA the discretion to "identify[ ] and resolv[e] potential conflicts" and determine "whether LightGrid's statement met the requirements of the solicitation." (ECF 41 at 10.) The defendant also notes that "it is the contracting officer's obligation to identify any potential or actual OCIs," and that an agency may not delegate to any contractor or offeror the responsibility for identifying OCIs. (ECF 36 at 22.)

In addition to alleging a material misrepresentation and failure to comply with the solicitation, ITellect argues that DISA should have disqualified LightGrid due to the appearance of an OCI. Moreover, ITellect also contests the adequacy of the contracting officer's post-award investigation. ITellect argues that the contracting officer "ignored critical portions of evidence highlighting at least the appearance of an OCI." (ECF 40 at 17-18.)

10

In its briefing, the plaintiff focused on the appearance of an OCI arising from the Smiths' marriage, and during oral argument it acknowledged that, based on the post-award investigation, the record contains no evidence of an actual OCI. With respect to DISA's OCI investigation, the only issue is whether the contracting officer adequately considered and addressed the appearance of an OCI.

To support its argument and to overcome the presumptive adequacy of the post-award investigation, ITellect cites "hard facts" to which the contracting officer failed to give due weight and that demonstrate the appearance of a conflict of interest. (ECF 29 at 15.) These "hard facts" include: (1) LightGrid misrepresented information in its offer and failed to comply with the terms of the solicitation; (2) Mrs. Smith has an imputed financial interest in LightGrid based on her marriage to Mr. Smith; (3) Mrs. Smith had previously served, for two months, as the contracting officer on the EVS contract; (4) Mrs. Smith served as the contracting officer for at least one other ITellect contract; and (5) Mrs. Smith had access to ITellect's proprietary pricing information, among other technical and staffing information. (*Id.* at 16-23.) ITellect also cites Mrs. Smith's work as a contracting officer for LightGrid's competitors as evidence that DISA's conflict-of-interest mitigation plan is insufficient. (ECF 40 at 20.) ITellect argues that these "hard facts" are sufficient to create the appearance of an OCI. (ECF 29 at 15-24.)

The defendant and LightGrid counter that ITellect has failed to present the necessary "hard facts" required "to establish that even the appearance of an OCI exists." (ECF 36 at 24; ECF 35 at 2.) In any case, the defendants emphasize, the contracting officer's conclusion about an alleged OCI is entitled to deference. (ECF 36 at 30.)

### A. LightGrid's Material Misrepresentation and Failure to Comply with the Solicitation

#### 1. Material Misrepresentation

The inclusion in a proposal of a misrepresentation "which materially influences consideration of [the] proposal should disqualify the proposal." *Plan. Rsch. Corp. v. United States*, 971 F.2d 736, 741 (Fed. Cir. 1992). To establish that a material misrepresentation occurred, the plaintiff must demonstrate "that the misrepresentations were both material and relied upon by the [agency]." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1317 (Fed. Cir. 2007). Admittedly, the Federal Circuit's test appears to be circular. A misrepresentation could only be material if the agency relied on it; if there is no reliance on an offeror's misrepresentation, then the misrepresentation, by definition, could not be material. The two-part test really boils down to a simple inquiry: was the misrepresentation relied on by the agency? If an agency relies on a misrepresentation, that misrepresentation is material to the procurement; if there is no reliance on it, the misrepresentation is not material. Whether a material misrepresentation has occurred is generally a question of fact, and the plaintiff bears the burden of proof. *See Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 701 (2022) (citing *Palantir,* 904 F.3d at 989).

A material misrepresentation claim may be based on omissions as well as affirmative false statements. *See, e.g., LightBox Parent, L.P. v. United States*, 162 Fed. Cl. 143 (2022) (bid

protest involving claim of a material misrepresentation by omission).  LightGrid is not alleged to have made an affirmative false statement; rather, ITellect alleges that it made a material misrepresentation through omission, by failing to disclose the Smiths' marital relationship in its proposal, and that DISA relied on LightGrid's omission to make the award. (ECF 29 at 14.)

The administrative record reflects that DISA neither relied on, nor was influenced by, LightGrid's alleged omission.  Any misrepresentation was therefore not material.

Upon concluding her investigation, the contracting officer found no evidence to show, or even hint, that DISA had relied on LightGrid's alleged omission to disclose the Smiths' marriage or on Mrs. Smith's position at DISA.  Mrs. Smith played no role in the development of the solicitation; she played no role in reviewing and evaluating proposals; she was not involved in making the best-value determination or in making the award decision.  The investigation also determined that Mrs. Smith did not access any relevant documents or information about ITellect or provide any information about ITellect to LightGrid.  (AR 1480.)

The contracting officer considered whether an OCI existed based on the relationship between Mr. and Mrs. Smith.  (AR 1473.)  Had LightGrid disclosed the Smiths' marriage, the contracting officer would have conducted a similar inquiry and reached the same conclusion that "no OCI" existed.  She would have likewise determined that this conclusion was "consistent with the representations LightGrid ma[de] in [its] proposal."  (AR 1480.)

No "hard fact" in the administrative record reflects that LightGrid's omission altered or influenced DISA's review of the proposals or its understanding of LightGrid's ability to perform the contract or its eligibility for award.  The administrative record contains no indication that DISA relied on LightGrid's omission of an OCI or the appearance of an OCI in its proposal arising from the Smiths' marriage.  ITellect therefore fails to demonstrate that, as a matter of law, LightGrid made a material misrepresentation.  To the extent ITellect argues that the contracting officer abused her discretion in finding that DISA did not rely on any misrepresentation, the record does not support its claim; the contracting officer's conclusions are rational and supported by the record.

## 2. Failure to Comply with the Solicitation's Mandates Regarding OCI

"A proposal's failure to conform to a term or condition of a solicitation renders the proposal unawardable only if the violation relates to a term or condition that is material." *Oak Grove*, 2024 WL 4138392, at *8 (citing *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996)).  The FAR allows contracting officers the discretion to "waive informalities and minor irregularities in offers received." FAR 52.212-1(g); *see Safeguard Base Operations LLC v. United States*, 989 F.3d 1326, 1347 (Fed Cir. 2021).

In *Safeguard Base Operations*, the Federal Circuit looked to FAR 14.405 as the guidon to provide an "example[ ] of what might constitute a minor informality or irregularity." *Id.*; *see also Oak Grove*, 2024 WL 4138392, at *8 (quoting FAR 14.405).  FAR 14.405 provides that a defect in a solicitation "is immaterial when the effect on price, quantity, quality, or delivery is

negligible when contrasted with the total cost or scope of the supplies or services being acquired."

LightGrid's proposal did address the prospect of an OCI arising from an unequal access to information. (AR 875.) Additionally, as the plaintiff effectively conceded in the wake of DISA's investigation, there was no actual OCI to disclose. As for a potential OCI, Mrs. Smith has disclosed her marriage every year and on multiple occasions recused herself from projects involving LightGrid. Against this background, LightGrid's failure to disclose the Smiths' marriage was, at worst, a minor irregularity that the contracting officer had the discretion to waive.

Even if LightGrid did fail to make a disclosure required by the solicitation, the contracting officer's findings in her post-award investigation demonstrate that the failure was not material, because DISA did not rely on that alleged misrepresentation. That conclusion is enough. *See Oak Grove,* 2024 WL 4138392, at \*9 (contracting officer is under no obligation to explain conclusion not to find an offer non-compliant when the solicitation did not require disqualification for the alleged violation).

Critically, the determination of whether LightGrid's proposal's discussion of potential OCIs was adequate falls within the discretion granted to the contracting officer, who also had the discretion to determine whether LightGrid's proposal contained "sufficient details" to show that that no actual or potential OCIs existed. *See* FAR 52.212-1(g). In considering the materiality of a solicitation's requirements, the Federal Circuit recently focused on the solicitation's text. *See Oak Grove,* 2024 WL 4138392, at \*9 (concluding that the alleged violations were not material to the solicitation's provisions on teaming agreements).

Here, the solicitation granted the contracting officer substantial discretion in making OCI determinations by providing that if an offeror "does not disclose or misrepresents any relevant facts concerning its conflict of interest, the government *may* take appropriate action." (AR 135 (emphasis added).) While the use of the permissive "may" does not confer plenary discretion on the contracting officer, in the absence of any prescribed standards that the agency is required to consider or apply, the government's discretion is at its apex. The exercise of that broad discretion will be upheld if the agency's conclusion is rational, based on the evidence in the record. The contracting officer acted within her broad discretion under FAR 52.212-1(g) and the solicitation in declining to exclude LightGrid from the procurement. *See Safeguard Base Operations LLC*, 989 F.3d at 1347; *Savantage Fin. Servs., Inc. v. United States*, 158 Fed. Cl. 240, 249 (2022).

The post-award investigation did not find anything that would have materially altered the outcome of the award. LightGrid's alleged failure to disclose the Smiths' marriage did not affect the offerors' proposed pricing or quality, or DISA's best-value determination.

LightGrid's proposal complied with the solicitation, but even if it had not, the contracting officer exercised her discretion properly in not disqualifying LightGrid.

**B.      DISA's Failure to Avoid the Appearance of a Conflict of Interest**

One of the goals of the FAR is to "[p]revent[ ] unfair competitive advantage" that may arise through unequal access to "proprietary information" or "source selection information." FAR 9.505(b)(1)-(2).  An OCI "may result when factors create an actual or potential conflict of interest." FAR 9.502(c).  It is not only actual OCIs that the FAR prohibits; it also bars the appearance of an OCI.  *See* FAR 3.101-1 ("[t]he general rule is to avoid strictly any conflict of interest or even the appearance of a conflict of interest in Government-contractor relationships"). The Federal Circuit has also held that an offeror may be disqualified for the appearance of an OCI.  *NKF Eng'g, Inc. v. United States*, 805 F.2d 372, 377 (Fed. Cir. 1986); *see also Raytheon Co. v. United States*, 170 Fed. Cl. 561, 589 (2024) (upholding an agency's decision to exclude an offeror based on the appearance of impropriety).

Review of a contracting officer's decision regarding an OCI is "highly deferential." *Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1296 (Fed. Cir. 2020).  A contracting officer's OCI determination will be upheld unless it is "arbitrary, capricious, or otherwise contrary to law."  *PAI Corp*, 614 F.3d at 1352.  If the contracting officer's findings are rational, they will be upheld on judicial review.  *Turner Constr. Co. v. United States*, 645 F.3d 1377, 1383 (Fed. Cir. 2011).

The contracting officer's investigation was thorough, and her determination reasonable. None of the "hard facts" ITellect proffers, taken alone or together, demonstrates that the contracting officer's conclusion was arbitrary, capricious, or otherwise contrary to law.  Her investigation adequately assessed whether there was an appearance of either a personal conflict or an OCI.  Based on that investigation, neither an actual OCI nor any perception of an OCI either affected the procurement or created any appearance of impropriety.  Mrs. Smith played no role in the solicitation or the review of offers, and the contracting officer's conclusion, that "an actual, potential, or perceived OCI does not exist for this procurement," is supported by the administrative record.  (AR 1480.)

Mrs. Smith had no role in the solicitation at issue.  Therefore, she could not have affected the procurement in any way.  The post-award investigation noted that the current solicitation was prepared by one branch of DISA, PS62, and at the time the solicitation was prepared, Mrs. Smith worked in a different branch, PS64.  PS64 played no role in developing or evaluating the solicitation.  (AR 1478.)  DISA and Mrs. Smith also took care to avoid the appearance of an OCI through a mitigation plan which, the contracting officer concluded, "appeared to be effective." (AR 1480.)  In her declaration, Mrs. Smith "confirmed that she has been recused from working on any contract or procurement where LightGrid is a contractor or potential offeror."  (AR 1477.)  Without any role in developing the solicitation or evaluating offers, Mrs. Smith was unable to affect the award from her position at DISA.

The facts here are distinct from those in which contracting officers have disqualified contractors based on the appearance of impropriety.  For example, in *Raytheon*, the employment by Raytheon of a retired Navy technical expert with access to "proprietary and source-selection information" was found to have created the appearance of impropriety.  *Raytheon Co. v. United States*, 170 Fed. Cl. at 657.  The contracting officer also found that that former Navy employee

had been "personally and substantially" involved in the procurement while seeking employment with Raytheon.[6]  *Id.* at 573.  Under those facts, Judge Solomson upheld the contracting officer's disqualification of Raytheon from the procurement.

As for Mrs. Smith's access to information, the contracting officer concluded that Mrs. Smith "did not obtain any advantageous information regarding the recompete effort from [the electronic document management system]."  (AR 1479.)  The contracting officer found credible Mrs. Smith's statement that she did not share, either with her husband or with anyone else at LightGrid, any information she gained through her role at DISA.  (AR 1476-77.)  The contracting officer's conclusion that Mrs. Smith did not provide LightGrid with unequal access to information demonstrates that the alleged appearance of an OCI did not create the appearance of impropriety or otherwise affect the procurement.  The contracting officer's post-award investigation also clears the air of any alleged appearance of an OCI.

The plaintiff's argument relies on implicit innuendo that a marriage between a contracting officer and an awardee's officer always creates the appearance of a conflict of interest.  That inference has implicitly been rejected in *Koam Eng'g Sys., Inc. v. United States*, 164 Fed. Cl. 128 (2022), and *Appsential, LLC v. United States*, 153 Fed. Cl. 610 (2021), and it is rejected here.  Such an inference is inconsistent with the modern workforce and families.  Agencies and government contractors must be careful to take appropriate steps to mitigate the potential for an OCI that may arise from a family relationship between an agency contracting official and an officer of its contractors and/or offerors, but the mere existence of such a family relationship is insufficient to give rise to the appearance of an OCI.  The perception on which the plaintiff seeks to rely proves both too much and too little.  Marriages may be in the process of dissolving; married partners may be estranged, but still legally married.  On the other hand, unmarried couples with the same professional relationships as Mr. and Mrs. Smiths' may evade application of the simple rule the plaintiff seeks to impose, even if they may have a less transparent relationship because they are not married.  It would have been better had LightGrid disclosed the relationship at issue, but if it had, DISA simply would have determined at an earlier stage in the procurement that there was no OCI or personal conflict and no appearance of one; the result would have been the same.

The plaintiff points to the decision of the Government Accountability Office ("GAO") in *Asia Resource Partners* to support its argument that LightGrid should have been on notice that a potential OCI existed, and DISA should have disqualified LightGrid based on that appearance.  In *Asia Resource Partners*, the GAO found that the Air Force acted reasonably when it excluded

---

[6] The former Navy employee at the center of the dispute in *Raytheon* also acted contrary to a non-disclosure agreement, in which he had agreed not to "solicit or accept . . . any promise of future employment . . . with, any officer, employee . . . or consultant of any of the firms which have . . . submitted proposals."  *Raytheon Co.*, 170 Fed. Cl. at 567.

an offeror from a procurement because the offeror's owner was married to an Air Force contracting officer. *Asia Resource Partners,* B-400552, Nov. 5, 2008, 2008 CPD ¶ 201.

In *Asia Resource Partners*, the Air Force had determined that there was an appearance of an OCI, and the GAO found that conclusion to be reasonable. The opposite is the case here. ITellect asks the court to substitute its judgment for the considered conclusion of DISA's contracting officer, but to do so would breach the deference to which that judgment is entitled.

In addition, the Air Force's determination in *Asia Resource Partners* was based not only on the existence of a martial relationship, but also on the fact that the contracting-officer spouse there "had access to shared computer storage drives and databases that contain significant nonpublic information on prospective and current acquisitions." *Id.* at 3 (cleaned up). Here, on the other hand, the investigation concluded that Mrs. Smith "did not have any relevant information to provide to Mr. Smith or anyone from LightGrid." (AR 1480.) *Asia Resource Partners* does not require LightGrid's exclusion here.

Further, the GAO itself has more recently distinguished *Asia Resource Partners*. In *KOAM Engineering Systems*, a contracting officer who was "not involved in any acquisition planning, development of requirements, or evaluation of proposals" involving an offer from her spouse's firm did not taint the award decision with either a conflict of interest or the appearance of one. *KOAM Eng'ing Sys.,* B-420157.2, Jul. 6, 2022, 2022 CPD ¶ 174 at 8. *KOAM* more closely resembles the circumstances presented here by the marriage of Mr. and Mrs. Smith.

The contracting officer's investigation was rational and is entitled to a high degree of deference. *See Oak Grove,* 2024 WL 4138392, at *9; *Turner Constr.*, 645 F.3d at 1383. Given the contracting officer's finding that Mrs. Smith had no role in the procurement at issue, the appearance of an OCI could not have significantly affected and did not significantly affect the procurement such that the award was improper.

## V.    CONCLUSION

DISA's post-award investigation is entitled significant deference unless the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Bannum,* 404 F.3d at 1351; *see also PAI Corp.*, 614 F.3d at 1351 (a court must provide a high degree of deference to an agency's reasonable OCI determinations). ITellect has not overcome the "twin layer of deference" accorded to DISA's post-award investigation. *Oak Grove*, 2024 WL 4138392, at *9.

The administrative record contains no indication that DISA relied on LightGrid's alleged omission in its proposal or that the underlying facts created the appearance of impropriety. The alleged omission in LightGrid's proposal did not affect or influence the development of the solicitation, DISA's review of proposals, or the award decision. LightGrid's proposal was not deemed disqualifying by the contracting officer, either initially or after the post-award investigation. Moreover, the FAR and the solicitation grant the contracting officer significant discretion to make OCI determinations, waive minor irregularities, and take other appropriate action. Considering that the agency's investigation and subsequent determination were

reasonable, any minor irregularities in LightGrid's proposal, including a failure to identify Mr. and Mrs. Smith's relationship, were immaterial.

The plaintiff's motion for judgment on the administrative record is denied.  The defendant's cross-motion for judgment on the administrative record is granted.  LightGrid's cross-motion for judgment on the administrative record is granted.  A separate order reflecting this outcome will be filed concurrently with this opinion.

s/ Richard A. Hertling

**Richard A. Hertling**
**Judge**